UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

STATE OF CONNECTICUT  :  3:12mJ 13 (DFM)
:
: ss: Hartford, January 19, 2012
:
COUNTY OF HARTFORD  :

## AFFIDAVIT

I, Ryan Joseph James, a Special Agent of the Federal Bureau of Investigation, New Haven Division, having been duly sworn, state:

### I. INTRODUCTION

1. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18 of the United Sates Code. I have been employed as a Special Agent with the Federal Bureau of Investigation ("FBI") since August 2009. Prior to joining the FBI, I was a sworn Police Officer in the City of St. Charles, Illinois. As a Police Officer, I served the City of St. Charles for approximately two and a half years.

2. While being trained as a Special Agent of the FBI, I have received basic drug training at the FBI Academy located in Quantico, Virginia. I have attended additional gang training sponsored by the California Gang Investigators Association and the FBI focusing on Street Gangs. I have attended training sponsored by the FBI focusing on the use of informants and cooperating witnesses. I have written and executed search warrants that have resulted in the seizure of illegal drugs and evidence of drug violations. I have executed seizure warrants that have resulted in the seizure of assets acquired with drug proceeds and assets utilized to facilitate drug activities. Over the past two years in federal law enforcement, I have participated in

investigations involving the illegal distribution of controlled substances. I have coordinated controlled purchases of illegal drugs utilizing confidential sources and cooperating witnesses. I have obtained and coordinated the execution of search and arrest warrants pertaining to individuals involved in the distribution of illegal drugs, conducted electronic as well as physical surveillance of individuals involved in illegal drug distribution, analyzed records documenting the purchase and sale of illegal drugs, and provided testimony in Federal and State Grand Jury proceedings. I have also interviewed admitted drug traffickers, drug users, informants and cooperating defendants, as well as local, state and federal law enforcement officers, regarding the manner in which drug distributors obtain, finance, store, manufacture, transport, and distribute their illegal drugs. I have supervised the activities of informants and cooperating witnesses who have provided information and assistance in the federal prosecution of drug offenders. I served as co-case agent, administrative agent and affiant on multiple Title III investigations targeting drug traffickers and their organizations.

3. I am currently assigned to the FBI's Northern Connecticut Violent Crimes Gang Task Force ("NCVCGTF"), an FBI-SPONSORED Task Force consisting of officers from the Connecticut State Police, Hartford Police Department, and Connecticut Department of Corrections. I am one of the case agents that has directed the investigation that is the subject of this Affidavit, in conjunction with Detectives of the Connecticut State Police, Detectives of the Hartford Police Department's Vice & Narcotics and Major Crimes Divisions, Special Agents from the Bureau of Alcohol, Tobacco & Firearms (ATF), Drug Enforcement Agency (DEA) and members of the NCVCGTF. I have fully participatedin this investigation and, as a result of this participation, as well as information provided by other law enforcement officers, I am thoroughly familiar with the information contained herein.

4.      For the reasons set forth in this Affidavit, I believe there is probable cause to arrest: SEMONAE RICHARDSON, a.k.a "CC," with a date of birth of ,           and last known address of                              Hartford, CT, for the offense of giving a materially false statement in a matter within the jurisdiction of the United States, in violation of Title 18, United States Code, Section 1001(a)(2). As this Affidavit is being submitted for the limited purpose of supporting a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause that RICHARDSON violated Title 18, United States Code, Section 1001(a)(2).

## II. SUMMARY OF INVESTIGATION

5.      On August 4, 2010, an arrest warrant was issued by United States Magistrate Judge Thomas Smith authorizing the arrest of Dominque MACK, a.k.a. "Little Sweets," for conspiracy to distribute cocaine base and marijuana in violation of Title 21, United States Code, Section 846. In addition to MACK, arrest warrants also issued for Rome ADAMS, a.k.a. "Cup" and "E," Brandon JONES, a.k.a. "City," Cherry Latoya BLUE, a.k.a. "Toya," Aaron HIPPOLYTE, a.k.a. "Hip," and Floyd RILEY, a.k.a. "F," for related narcotics offenses arising from the same investigation. On August 4, 2010, all of the referenced individuals were arrested, except MACK. On August 4, 2010, members of the NCVCGTF and assisting law enforcement officers went to MACK's last known address at                       Hartford, Connecticut, in an attempt to locate and arrest MACK. Investigators encountered members and associates of MACK's family. MACK was not at the residence and none of MACK's family members claimed to know his current location.

6.     On August 12, 2010, a Hartford grand jury returned an Indictment charging MACK with conspiracy to distribute marijuana and cocaine base.

7.     On September 15, 2010, a Hartford grand jury returned a 56-count Superseding Indictment charging MACK and thirty-two others, with assorted narcotics and firearm charges. MACK was charged in the Superseding Indictment with the use of a telephone to facilitate the commission of a drug-trafficking felony, in violation of Title 21, United States Code, Section 843(b), and conspiracy to distribute marijuana, in violation of Title 21, United States Code, Section 846. A warrant for MACK's arrest was issued following the return of the Superseding Indictment.

8.     On September 21, 2010, federal agents arrested Shane HENRIQUES, a.k.a. "Banks," Kyle PITTS, a.k.a. "Bark," and Curon JOHNSON, a.k.a. "Buck," all of whom were close associates of MACK, on assorted narcotics charges arising from the same Superseding Indictment in which MACK was charged. MACK, however, had still not been located.

9.     Throughout the Spring and Summer of 2011, in an effort to locate MACK, federal agents distributed FBI wanted posters at various locations, including inside the apartment buildings on Vine Street between Albany Avenue and Mather Street, which is the block where RICHARDSON resided at                    The Vine Street area was targeted because investigators received information from multiple sources that MACK was seen in this area of Vine Street. The wanted posters included a photograph of MACK, his name and nickname, his physical descriptors and the FBI tip line phone number.

10.    On or about June 11, 2011, I and other members of the NCVCGTF, received information from a Hartford Police Department (HPD) Cooperating Witness ("CW1") that MACK was staying at RICHARDSON's residence located at                         in

-4-

Hartford. Upon learning this information, federal agents and task force officers from the NCVCGTF went to ⬛⬛⬛⬛ to look for MACK. Upon arrival, investigators knocked on the front door to ⬛⬛⬛⬛ RICHARDSON answered and identified herself as SEMONAE RICHARDSON, the resident of the apartment. Investigators identified themselves as law enforcement officers and showed RICHARDSON a non-descriptive photograph of MACK and asked her if she had seen the individual or knew of him. RICHARDSON denied that she recognized, seen or otherwise knew the individual depicted in the photograph. Investigators then asked RICHARDSON if they could enter her apartment to verify that MACK was not present. RICHARDSON denied investigators entry to her apartment.

11.     On or about June 15, 2011, I, and other members of the NCVCGTF, received information from CW1 that MACK was currently at RICHARDSON's residence at 36 Vine Street, Apartment B1. CW1 also reported to federal agents that s/he knew MACK was wanted by the police and that RICHARDSON was aware of MACK's status as a wanted person. Members of the NCVCGTF then assembled near RICHARDSON's residence. As investigators assembled near the above location, CW1 confirmed that MACK was still present inside the apartment. Investigators then made entry into ⬛⬛⬛⬛ and observed MACK standing near the doorway to the master (west) bedroom. Investigators ordered MACK to the ground, handcuffed him, and asked him his name. MACK responded, "you know my name." MACK was asked again his name and he responded, "Dominique MACK."

12.     After investigators entered the apartment and arrested MACK, RICHARDSON returned to the apartment. RICHARDSON was interviewed by agents and provided the following information. She stated that MACK had only stayed the previous night at her residence. RICHARDSON denied that she and MACK were romantically involved. In fact,

RICHARDSON stated that she was married to another woman. RICHARDSON provided consent to investigators to search the apartment and signed a FBI Consent to Search Form. A search of the apartment resulted in the seizure of the following items: (1) one black Ruger 9 mm handgun, located under mattress in the second bedroom, with one live round in the chamber and a magazine containing six (6) live rounds; (2) one plastic bag containing three (3) 9 mm rounds located under the bed in the master bedroom; and (3) one box of HERTER's 9 mm ammunition containing nine (9) rounds located in a blue Marshall's bag in the closet of the master bedroom.

13.     RICHARDSON was asked if she had knowledge of any of the seized items, particularly the ammunition and firearm. RICHARDSON denied knowledge, possession and ownership of the firearm or ammunition located in her apartment.

14.     On or about August 17, 2011, I returned                          , to interview RICHARDSON about any information she had about the Ruger 9 mm pistol located under the mattress in the west bedroom and the 9 mm ammunition located in the closet of the master bedroom. RICHARDSON stated that neither the pistol nor the ammunition belonged to her and stated that she had no knowledge the pistol or ammunition were present at her residence on June 15, 2011, or anytime prior. During this interview, RICHARDSON advised that MACK was at her residence on three prior occasions, and not once as she previously told investigators, before he was arrested on June 15, 2011. According to RICHARDSON, the first time MACK was at her residence was in early June of 2010. RICHARDSON explained that she met MACK on the street a few days prior to him first staying at her residence, and that she knew of MACK because she knew his brother, Ricardo MACK, but was not friends with MACK.

15.     On or about September 21, 2011, I interviewed RICHARDSON again. When asked how she met MACK, RICHARDSON stated that she met MACK through another person

who asked that RICHARDSON "look out" for MACK. RICHARDSON also admitted that starting on or about April 25, 2011, MACK began staying at her residence on a regular basis. RICHARDSON gave MACK keys to the front door to            so he could come to her residence at any time. RICHARDSON left the front door of her apartment unlocked so that MACK could access her residence. RICHARDSON explained that MACK would give money to her for letting him stay at her residence. RICHARDSON also admitted that she and MACK were presently in a "romantic relationship." RICHARDSON was again asked about the Ruger pistol and the ammunition located in her closet. RICHARDSON again denied knowledge or possession of the firearm and ammunition, although she did acknowledge that there was a blue Marshall's bag in her closet which belonged to her and that it contained articles of clothing.

16.     Following RICHARDSON's September 21, 2011 interview, a review of MACK's recorded prison calls revealed that RICHARDSON and MACK talked regularly. A review of these calls revealed that MACK and RICHARDSON frequently told each other that they loved each other.

17.     On or about October 24, 2011 the FBI Laboratory reported that latent print examiners discovered an identifiable latent print on the HERTER's ammunition box that was found in the blue Marshall's bag inside the closet of RICHARDSON's bedroom. A set of RICHARDSON's prints were subsequently sent to the FBI Laboratory for comparison.

18.     On or about December 21, 2011, FBI latent print examiners concluded that a latent print found on the HERTER's ammunition box belonged to RICHARDSON.

## CONCLUSION

19.     Based on the foregoing facts, I believe that there is probable cause to conclude that SEMONAE RICHARDSON made a materially false, fictitious and fraudulent statement to FBI agents, that is, that did not know or recognize MACK when shown his photograph on June 11, 2011, that she did not possess or have knowledge of the ammunition recovered from her bedroom closet, that MACK had only stayed at her apartment the night prior to his arrest, and that she did not have friendship with MACK and only knew him through her relationship with MACK's brother, all in violation of Title 18, United States Code, Section 1001(a)(2).

20.     Because this is an application that pertains to an ongoing criminal investigation, and because disclosure of the information contained herein as well as disclosure of the warrant being requested herein may compromise the investigation by increasing the risk that RICHARDSON may flee or attempt to allude apprehension thereby increasing the harm for the law enforcement officers responsible for effecting the arrest, I request that the warrant, application, and this affidavit be ordered sealed by the Court, until further order of the Court.

RYAN JOSEPH JAMES
SPECIAL AGENT, FBI

Subscribed and Sworn to before me
this _____ day of January, 2012.

/s/ Donna F. Martinez
DONNA F. MARTINEZ
UNITED STATES MAGISTRATE JUDGE